WILLIAM PRESTON V. NORTHWESTERN CEREAL COMPANY, WILLIAM A. DE BORD, RECEIVER, APPELLEE, IMPLEADED WITH FOURTH NATIONAL BANK OF CADIZ, OHIO, APPELLANT.

FILED JANUARY 8, 1903. No. 11,048.

Commissioner's opinion, Department No. 1.

1. Accommodation Indorsement: CORPORATION: ULTRA VIRES. An accommodation indorsement by a manufacturing and trading corporation is *ultra vires.*

2. ———: ———: ———: EVIDENCE: FINDING. Evidence examined,

Syllabus by court; catch-words by editor.

and *held* to sustain finding that loan was made to the signer and first indorser of note, and the indorsement of the corporation, of which he was president, appearing on the note, was made and accepted as an accommodation indorsement, and created no liability.

APPEAL from the district court for Douglas county by the Fourth National Bank of Cadiz, Ohio, from an order made by said court on the 11th day of May, 1899, disallowing a claim (based on a promissory note) against the appellees. Heard below before DICKINSON, J. *Affirmed.*

*Edward J. Cornish,* for appellant.

*Howard H. Baldrige* and *William A. De Bord, contra.*

HASTINGS, C.

This case presents an appeal from the disallowance of a claim of the appellant, the Fourth National Bank of Cadiz, Ohio, against the Northwestern Cereal Company and its receiver on a promissory note. The note is as follows:

"5,000 no-100.                    "OMAHA, Jan. 29th, 1896.

"Four months after date we promise to pay to the order of Wm. Preston five thousand & no-100 dollars at National Bank of Commerce, Omaha, Neb. Value received with interest at the rate of eight per cent. per annum, from maturity until paid.                    WM. PRESTON & Co."

Indorsed on back: "Wm. Preston. Northwestern Cereal Co., Wm. Preston, Pres't. For collection and remittance to the Fourth Nat'l Bank of Cadiz, Ohio, J. M. Schreiber, Cashier."

Written across face: "Protested for non-payment. Omaha, Neb., June 1-96. Lee W. Spratlen, Notary Public."

It was a renewal of another note of the same form dated in October, 1895, which was in turn a renewal of a like one of April 24, 1895. By the terms of the paper and its indorsements it would be a note made to Wm. Preston, sold by him to the cereal company, and by it sold and indorsed for value to the claimant. It is, however, conceded that

the transaction was in fact a loan by the claimant, and the receiver resisted on the grounds: First, that there was no consideration for the cereal company's indorsement; second, that the company's name was indorsed without authority from the corporation; third, that the indorsement was *ultra vires* of the corporation. At the argument it was conceded that if the cereal company's indorsement was not for value but merely for the accommodation of Wm. Preston, there was no liability. It is claimed, however: First, that the loan was in reality made to the company, and that it got the money, and if it did not retain it the loss was by its own fault; second, that it fully ratified the transaction; and third, that under the circumstances of this loan the company is estopped to deny its liability.

There seems to be very little question as to the facts. On April 10, 1895, William Preston, Walter G. Preston and one August S. Knabe organized the Northwestern Cereal Company "for the manufacture, purchase and sale of all kinds of cereals and cereal products." Its place of business was Omaha, Nebr. Its capital stock was to be $300,000, $150,000 of which was to be delivered to Wm. Preston for the cereal plant and business he then owned and was conducting under the name of Wm. Preston & Co., at Omaha. April 23, 1895, Bostwick & Nixon, loan brokers, who had previously made loans to Wm. Preston for the Cadiz bank, which had been paid, received from the bank a telegram saying it would loan him $5,000 for six months at 8 per cent. per annum, on same collateral as before. On inquiry the brokers learned that the loan was desired. This note was drawn and delivered to Bostwick & Nixon, and their check issued on April 24 to Wm. Preston or order for $4,766.11, proceeds of the loan. The check was indorsed to the cereal company by "W. G. Preston, attorney in fact," and was paid through the clearing-house April 25, 1895. Mr. Bostwick says that his conversation in regard to the loan soon developed that the cereal company had been organized and had absorbed the busi-

ness of Wm. Preston & Co., and he then told Mr. Walter
Preston that the negotiations could not go forward unless
the financial strength of that business was represented in
the new paper by indorsements or otherwise. Walter re-
plied that his father's authority, as president, must be
obtained, and in some way the matter was arranged, and
Walter represented that he had authority to indorse the
cereal company's name on the note. Walter Preston says
that the check was given him by Wm. Preston, and de-
posited by him with other money to the credit of the
cereal company at the First National Bank of Omaha,
on April 24; that about an hour later Mr. Bostwick tele-
phoned to the office for Wm. Preston, who shortly after
came in and went to Mr. Bostwick's office, where at Bost-
wick's request, he indorsed the cereal company's name on
the note. Walter Preston gave Wm. Preston credit for
the cash proceeds of the note, and on May 4, checked the
amount, with a little additional, to the Council Bluffs
Savings Bank to pay a private indebtedness of Wm. Pres-
ton, as Walter states. He also states that he knew at the
time of the conversation over the telephone, and knew that
night that the company's name was indorsed on the note.
As above stated, it is conceded that no authority existed
for an accommodation indorsement of the company's name
on this paper. It seems clear from the statement of this
evidence that it is ample to warrant the trial court in
finding, as it did, that the transaction was, by the bank and
its agents, understood to be a loan to Wm. Preston. In
that case nothing short of an actual beneficial receipt and
retention of money would seem to warrant any claim of
estoppel against the cereal company or its representative.
*Sturdevant v. Farmers & Merchants' Bank,* 62 Nebr., 472.
It is claimed that the fact that the money was in the hands
of the treasurer of the cereal company from April 24 to
May 4, with knowledge that the indorsement had been
made, amounts to a ratification of the act. Probably
this is true. Under such circumstances, it is difficult
to see how the company or its representative could object

that it had not authorized the indorsement. If it was intended to deny that the act was authorized, it should have returned the money. But this does not do away with the admitted difficulty that there was no authority anywhere to pledge the credit of the company for Preston's accommodation. An act which could not be authorized could not be ratified. The claim that the company at one time got this money, and, if it did not retain it, should have done so, and therefore can not be permitted to say that it was a few days later paid out for Preston's benefit, seems to ignore the finding that the loan was made by the bank to Preston. There is no showing that the lender or its agents knew that the check was deposited to the cereal company's credit, or, if they did, that they considered such deposit as anything more than an authorized disposition of the check by the borrower to whom it was made payable, Wm. Preston. How can the lender complain, if the cereal company pays it out for the benefit of the person to whom it had been loaned, to whose order the check was drawn a few hours before any indorsement by the company was contemplated? Counsel dwells upon the fact that the check was not paid until May 25, and payment could have been stopped on the check, then in the cereal company's possession, or placed to its credit in its own bank, if the indorsement had not been made. But it does not appear that any such fact was known when the indorsement was asked for, and if it had been, the leaving the transaction to stand as money paid to Wm. Preston on his obligation would seem to only establish more strongly that the loan was to him, and the indorsement a pledge of the company's credit for his benefit. If the lender was willing to have it so, and trust Wm. Preston on the strength of the indorsement alone, how can it complain that the cereal company did not retain the money?

It is recommended that the judgment of the trial court be affirmed.

DAY and KIRKPATRICK, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the trial court is

AFFIRMED.